# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JUANITA GOWDY and PARIS KING,<br><br>           Plaintiffs,<br><br>  vs.<br><br>UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER; JAMES KOBAK; ANDRE HULING; KAYLA TOMM; JAMAL GILL; CHASE SEDIVY and CITY OF CLEVELAND,<br><br>           Defendants. | Case No._____<br><br>Judge _____<br><br>**COMPLAINT WITH JURY DEMAND** |

## I. Introduction

1. This lawsuit involves an egregious manifestation of the unfortunate phenomenon known as "contempt of cop" arrests, "a recognized form of police misconduct nationwide" whereby citizens are wrongly arrested and maliciously charged with crimes, "for being disrespectful to police officers or talking back to them."[1]

2. The victims of the constitutional violations at issue in this lawsuit are two black women, Plaintiff Juanita Gowdy, who was at the University Hospitals Cleveland Medical Center on July 3, 2023 to receive emergency medical treatment, and Gowdy's daughter, Plaintiff Paris King, who went to the hospital with her mother that day to provide her with companionship and counsel and to help ensure her health and safety.

3. While Gowdy and King were waiting for the results of testing that hospital staff had ordered for Gowdy, they briefly stepped outside the main entrance to the E.D. to an area designated for

---

[1] "Jury Awards $97,500 Against D.C. Police in 'Contempt of Cop' Arrest," ACLU of the District of Colombia, March 26, 2011, available at: https://www.aclu.org/press-releases/jury-awards-97500-against-dc-police-contempt-cop-arrest (accessed on July 2, 2024).

smokers and otherwise for hospital visitors to congregate. Here, they witnessed University Hospital police officers deny a distraught father entry to the hospital after the man's son had been brought in with a potentially fatal gunshot wound. As these events unfolded, Gowdy and King joined this father, his family members, and other bystanders in complaining to the police about what they reasonably perceived to be the police officers' mistreatment of this man.

4. As Gowdy and King complained and expressed their opinions about the way the police denied this distraught father's entry to the hospital, the Defendant police officers mocked them, and then barred their re-entry to the hospital, not for any legitimate reason but to retaliate against them for their constitutionally protected speech. Then, when the police finally permitted Gowdy to re-enter after she requested their badge numbers and stated her intent to report their misconduct, King naturally followed her mother back into the hospital.

5. As King followed her mother back into the hospital, the Defendant police officers—again not for any legitimate reasons, but to retaliate—told King that she was not permitted to re-enter the hospital with her mother. Then one of the officers immediately grabbed her arm, and as King recoiled and complained about being needlessly grabbed by the police, three of the Defendant officers rushed her, slammed her body into a metal barrier and a stone garbage receptacle, and tackled her to the ground as they cuffed her and humiliated her, including by pulling her dress up over her underwear. The Defendants then conspired with the City of Cleveland's law department to charge King with disorderly conduct and resisting arrest, and charge Gowdy with disorderly conduct, trespassing, and obstruction of official business.

6. At no point in these events did Gowdy and King present any significant security or safety risk to the hospital or to the Defendant officers. Gowdy's and King's complaints to the police officers were constitutionally protected, and could not possibly be interpreted as supporting criminal charges. Had the officers respected or even tolerated Gowdy's and King's constitutionally protected complaints and allowed the patient and her daughter to simply re-enter the hospital where Gowdy

2

was receiving care, all the parties to this case would have gone about their days without incident, and Gowdy and King would not have been subject to police brutality and trumped-up criminal charges. The only "disorderly conduct" and "obstruction" at issue in this case was the officers' spiteful and retaliatory decision to bar Gowdy and King from re-entering the hospital. King's "resistance" was not to any lawful conduct by the officers, but to what she reasonably perceived to be their retaliatory and unconstitutional use of excessive force against her. *State v. Elko*, 2020-Ohio-4466, 158 N.E.3d 929 (8th Dist.) ("[W]e agree with [defendant's] position that 'resisting arrest and resisting an officer's use of excessive force in making an arrest are two different things.'"). And the notion that Gowdy could have been "trespassing" by being in public areas of a hospital where she was a patient, particularly after the police had given her express permission to re-enter the hospital, is especially preposterous and especially illustrative of the Defendant officers' malicious intent to violate Gowdy's and King's constitutional rights.

7. As alleged herein, Defendants' actions, and the circumstances creating the incentives for these actions, offer a compelling demonstration of the importance of the protections offered by the Constitution and 42 U.S.C. § 1983 against abuses by those entrusted with state power.

8. In particular, this case illustrates the problematic manifestation of an all-too-common fact pattern that has resulted from the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S.477 (1994), where it held that putative 1983 plaintiffs are barred from pursuing a remedy for civil rights abuses, no matter how egregious, if that remedy would imply the invalidity of any criminal conviction, no matter how minor, related thereto. Thus, in any case where egregious police misconduct is at issue, as here, *Heck* incentivizes the responsible officers to trump up baseless criminal charges against the victim—such as for disorderly conduct, obstructing official business, or resisting arrest—to insulate themselves from liability, knowing that the average citizen will be less likely to stand a criminal trial to retain the right to pursue their civil claims.

9. State actors, like Defendants here, who initiate baseless criminal proceedings with the intent

3

to bar the subject of those proceedings from suing to remedy a civil-rights abuse under *Heck* violate that citizen's fundamental First Amendment right to access the Courts. Defendant City of Cleveland is herein alleged to have adopted and employed a custom, policy, and practice of depriving such citizens of their First Amendment rights in precisely this manner.

10. Plaintiffs thus herein assert claims under 42 U.S.C. § 1983 for Defendants' violations of their First Amendment right to petition federal and state courts for civil relief, their First Amendment right to criticize the police, and their rights under the Fourth and Fourteenth Amendments to be free from excessive force and malicious prosecution by state actors.

11. Gowdy also asserts claims under Ohio law against Defendant University Hospitals for negligence and breach of its contractual duties to its patients, including by failing to train their in-house police officers, and allowing the officers to harass patients and their families, violate their sacred constitutional rights, and needlessly brutalize them and charge them with crimes they didn't commit.

## II. Jurisdiction and Venue

12. This Court has federal-question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for claims raised under 42 U.S.C. § 1983 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for claims raised under Ohio law.

13. This Court has jurisdiction over Defendants because they are residents and/or employees of political subdivisions, of the State of Ohio, and at all times were acting under color of state law.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts upon which the claims in this litigation are based and the damages resulting therefrom took place in Cuyahoga County, Ohio.

## III. Parties

15. Plaintiff Juanita Gowdy is and at all times relevant was a resident of Cuyahoga County, Ohio.

16. Plaintiff Paris King is and at all times relevant was a resident of Cuyahoga County, Ohio.

4

17. Defendant University Hospitals Cleveland Medical Center is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio.

18. Defendants Huling, Gill, Sedivy, and Tomm are and were at all relevant times Ohio residents serving as duly licensed and certified law enforcement officers of the State of Ohio as officers of the UH Police Department, a law enforcement agency operated pursuant to a Memorandum of Understanding/Authorizing Agreement with the Cleveland Police Department and City of Cleveland. They are sued herein in their respective individual capacities.

19. Defendant James Kobak is the Chief of Police of the UH Police Department and supervises the training, duties, and performance of the UH Police Defendants, and is in turn subject to the authority of the Cleveland Police Department and City of Cleveland in the matter of policies and procedures for law enforcement by the UH Police Department and the UH Police Defendants. He provides supervisory and policy-making authority for UH Police Department policies and practices implementation of Cleveland Police Department policies and procedures. He is sued in his individual and official capacities.

20. Defendant City of Cleveland is a political subdivision of the State of Ohio, which has final policymaking authority for implementation of Cleveland Police Department policies and procedures, and is subject to suit under 42 U.S.C. § 1983 for adopting, supporting, and permitting the unconstitutional customs, policies, and practices alleged herein.

### IV. Facts

21. Plaintiff Juanita Gowdy is a 63-year-old black woman who visited the emergency department at University Hospital's Cleveland Medical Center on Sunday July 2, 2023 to seek treatment for swelling in her leg that was impairing her ability to walk and caused her to be concerned that she was suffering from a blood clot.

5

22. Ms. Gowdy was at the hospital that day with her daughter, Plaintiff Paris King, who was there to provide her mother with companionship and counsel and to help ensure her health and safety.

23. Gowdy and King had been at the hospital for approximately four hours as of the interaction at issue in this case. It was a holiday weekend and the hospital's emergency room was packed. By approximately 10:30 that evening, Gowdy and King were still waiting for the results of testing that hospital staff had ordered for Gowdy, and had stepped outside the visitor's entrance to the E.D. in an area where smokers and hospital visitors and staff were permitted to congregate.

24. While Gowdy and King were in this outdoor area, a gunshot-wound victim who was apparently in critical condition was brought to the hospital through the entrance near this outdoor waiting area. A distraught man who identified himself as the father of the gunshot victim then shortly attempted to enter the hospital to be with his son. Officers of the University Hospitals Cleveland Medical Center Police Department, including the Defendants named herein, denied this distraught father entry to the hospital, thereby causing him to become even more upset as he was walked away from the entrance by two bystanders believed to be his family members, who were also complaining to the police officers about their seemingly wrongful denial of this father's entry to the hospital to be with his son who was suffering from a potentially fatal injury.

25. There was no reason for Gowdy, King, or anyone to believe that this father was in any way incompetent or unfit to be present in the hospital room with his son.

26. Gowdy and King were likewise disturbed to see the manner in which the police officers treated this man, and thus joined the family members in complaining to the officers and questioning them about why they wouldn't let this man into the hospital to be with or at least near his critically injured son. The police video of this incident shows that Gowdy and King urged the officers, "that's his baby," regarding the gunshot wound victim and his father, and Gowdy further stated that there "ain't no sense in having civil rights" if the police at a hospital could treat a man as callously as they

6

treated this distraught father. As Gowdy made these remarks, Defendant UH police officer Kayla Tomm was recorded on her body camera video stating, from a distance of about 30 feet from Gowdy while Gowdy was speaking with other UH officers, that Gowdy was "a patient," and that "she's not related" to the gunshot wound victim. Defendant officers Jamal Gill and/or Andre Huling added, also out of King's and Gowdy's earshot, that "she ain't got nothing to do with it." Tomm also stated, in response to Gowdy's comments but not loud enough to be heard by Gowdy, "Just get in your car, go home."

27. In addition to sharing the other officers' resentment and animus towards Plaintiffs due to their assertion of their free-speech rights, Defendant Jamal Gill has demonstrated, by his publicly posted social media posts, that he possesses an animus against women—especially women he deems to be "crazy," or with "mental issues," and women who don't know how to "STFU," or "shut the f*ck up," like they used to do "back in the day" before "society changed."

28. To wit, the following images are all public posts made by Gill to his Facebook page dating back to 2019:



7



29. Additionally, Gill has also publicly taken issue with those who "snitch" about misconduct "at work," including this post from March 18, 2019, dubbing such "snitches" as "miserable asf [as f*ck]."



30. Gill's admitted animus toward women who speak contributed to the unfortunate events of this day.

31. To wit, seconds after Tomm expressed her wish that Gowdy would "just get in her car and go home," Gowdy instead approached the entrance to the E.D., where Tomm, and Gill and/or Huling were standing as they continued to mock the mother and daughter, and Gowdy then told the

8

officers that she was going to "get her stuff" from inside the hospital and was "going to do something about" the way they treated the distraught father. "This is dead wrong; we ain't in 1963," Gowdy continued, referring to the year before the enactment of the Civil Rights Act.

32. At this point, as Gowdy tried to re-enter the hospital, the police officers on the scene, including Tomm and her co-Defendants Andre Huling, and Jamal Gill, barred Gowdy's entry and did so not for any legitimate reason, but rather to retaliate against Gowdy for her constitutionally protected speech. King, who was following her mother to re-enter the hospital, then took issue with the way the police were treating "[her] mother." Gowdy continued to explain to the officers that she needed to re-enter the hospital to obtain her test results, stated that she was a patient (a fact that the officers already knew), and raised her wrist to show the hospital-issued wristband confirming that she was in fact a patient of the hospital as of that day. Despite these facts, the police continued to argue with her and bar her re-entry, causing Gowdy to request their badge numbers and state that she intended to "report" them for "violating [her] rights."

33. After a few minutes of arguing, Huling finally authorized Gowdy's entry into the Hospital. Gowdy and King reasonably expected that King would be permitted to re-enter the hospital with her mother, and the Defendant officers were aware that the two were mother and daughter. Thus, Gowdy and King proceeded to enter the hospital, with Gowdy holding King's arm. At this point, Huling and/or Gill stated that King could not enter, and before she could even react, Gill grabbed King's shoulder and pulled her back forcibly.

34. The officers had no legitimate reason to deny King's re-entry to the hospital with her mother, but rather did so with intent to retaliate against Gowdy and King for their constitutionally protected speech. Gowdy and King reasonably perceived that the police officers' denial of King's re-entry to the hospital, and their initiation of physical contact with King in furtherance of same, was arbitrary, unnecessary, unreasonable, retaliatory, and unlawful.

9

35. After the police first initiated physical contact with King and denied her re-entry to the hospital with her mother, the verbal argument between King and the officers escalated in contentiousness and volume. King clearly stated to the officers that she would not enter the Hospital so long as they did not touch her again.

36. As King continued to complain to the officers about the way they were treating her, three of Defendant officers Gill, Tomm, and Chase Sedivy rushed her, slammed her body into a metal barrier and a stone garbage receptacle, and tackled her to the ground as they cuffed her and humiliated her, including by pulling her hair extensions out and pulling her dress up over her underwear.

37. At the same time that the officers were exercising needless and excessive force against King, Gowdy stood in the doorway of the hospital terrified for her daughter's life, and pleaded with officers to leave her daughter alone. Gowdy was standing still and merely watching these events unfold in horror, yet Defendant Huling blocked her from exiting the hospital door.

38. After the Defendant officers were finished brutalizing King, they then took her to a holding area and detained her for an extended period of time before releasing her and finally allowing her to leave the hospital with her mother.

39. The next day, July 3, 2023, Gowdy and King visited the Cuyahoga County Prosecutor's office to file a formal complaint against these officers for violating their civil rights.

40. On July 7, prosecutors for the City of Cleveland filed charges in the Cleveland Municipal Court against King for resisting arrest under R.C. 2921.33, criminal trespass under C.C.O 623.04, and persistent disorderly conduct under R.C. 2917.11, and against Gowdy for obstructing official business under C.C.O. 615.06 and persistent disorderly conduct under R.C. 2917.11.

41. At all times during these events, Gowdy and King had reason to believe that the police officers' denial of their re-entry to the hospital, and the police officers' physical engagement with King in furtherance of same, was arbitrary, unnecessary, unreasonable, retaliatory, and unlawful.

10

42. It would have been reasonable for these police officers to allow Gowdy and King to re-enter the hospital without questioning them, obstructing them, or otherwise impeding their progress. It also would have been reasonable for the officers, after they had initiated physical contact with King and denied her entry to the hospital, to disengage from their argument with her, and instead instruct and allow her to leave the area and proceed to her automobile to wait for her mother.

43. At all times during the physical contact and arrest, UH Police Defendants acted under color of state law unreasonably, recklessly, negligently, willfully, wantonly, and/or intentionally to ignore Plaintiffs' clearly established rights to protected speech and petitioning of government officials fore repetition governmental officials and protected speech and to retaliate against them for the exercise of this protected conduct.

44. As a direct result of the Defendants' actions Plaintiff Paris King suffered physical and emotional injuries, and Plaintiff Juanita Gowdy suffered physical and emotional injuries, for which they have incurred expense and expect to continue to suffer in the future.

45. In January of 2024, after these charges had been pending for approximately 6 months, a prosecuting attorney for the City of Cleveland e-mailed counsel for Gowdy and King with the subject line "Resolution Discussions," in which the prosecutor asks "Let me know what resolution your clients are seeking to resolve these matters," and states as follows: "After reviewing the evidence in this matter, for Ms. Paris King specifically, I am considering re-filing as felony assault on a peace officer. Before I make any decisions on that, I want to speak with the County Prosecutor's Office and UH." Such threatened inflation of charges reflected the ongoing retaliation of the Police, City, and individual Defendants to Plaintiffs' exercise of their rights to political speech.

46. The UH Police Department operates subject to a Memorandum of Understanding, titled *Police Authorizing Agreement between the City of Cleveland and the University Hospitals Cleveland Medical Center,*

11

which provides that UH Police "have the same authority as [Cleveland] Division [of Police] officers."[2]

47. This Authorizing Agreement specifically incorporates the Cleveland Police use of force policy, meaning that the UH Police are subject to the policies and procedures of the Cleveland Police Department, as set and supervised by Defendant City of Cleveland, regarding use of force and arrest. *Id.*

48. Defendants City of Cleveland and Kobak hold supervisory authority over the implementation and supervision of the Cleveland Police Department's policies and procedures by the UH Police Department and thus also hold the obligation to ensure that policies and procedures of these police departments are lawful and correct.

49. Defendants City of Cleveland and Kobak likewise maintain and implement a policy and practice, whether by written or oral direction or custom, of encouraging, allowing, and/or failing to prevent by training or supervision, the retaliatory, wrongful, and illegal arrest of persons engaged in protected activity such as criticism of the UH Police, or otherwise violating the constitutional and civil rights of individuals forced by circumstance and emergency to enter Hospital grounds and premises. These unlawful policies and procedures are known or should be known to Defendants City of Cleveland and Kobak, who have failed to take any action to change or eliminate them.

50. Defendants City of Cleveland and Kobak have at all times acted recklessly, negligently, wantonly, knowingly, and/or willfully to effect and maintain a policy and procedure, whether by

---

[2] Cleveland Division of Police General Police Order, July 19, 2021, *Protocol – University Hospitals Cleveland Medical Center Police Department*:

https://www.clevelandohio.gov/sites/clevelandohio/files/policies-procedures/4.03.09%20Protocol%20-%20University%20Hospitals%20Cleveland%20Medical%20Center%20Police%20Department.pdf

(Last accessed June 27, 2024).

written direction or custom or otherwise, resulting in excessive, unlawful, and unconstitutional arrests and prosecutions of individuals who engage in constitutionally protected conduct.

51. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered deprivation of constitutional rights, pain and suffering, and emotional distress, which they will continue to suffer in the future.

## V. Causes of Action

### COUNT 1
### Retaliatory Arrest, First Amendment and 42 U.S.C. § 1983
### against all UH Police Defendants

52. Plaintiffs incorporate by reference each preceding paragraph as if fully rewritten herein.

53. Plaintiffs Juanita Gowdy and Paris King engaged in protected conduct – notably, First Amendment-protected speech critical of government – when they criticized the UH Police Defendants for refusing to allow a grieving father to see his critically injured son.

54. The UH Police Defendants initiated physical contact, and arrested Plaintiff King while physically detaining Plaintiff Gowdy because of the criticisms the pair had made of Defendants' conduct.

55. The arrest and seizure of the Plaintiffs were undertaken without any probable cause to do so, and substantially because of, and in retaliation against, their protected speech.

56. Fear of arrest and/or physical restraint are sufficient to chill a person of ordinary firmness in the exercise of their constitutionally protected free speech rights.

57. As a direct and proximate result of Defendants' actions, Plaintiff King was wrongfully arrested, and Plaintiff Gowdy wrongfully detained, and each was subsequently charged with criminal violations, in retaliation for their protected exercise of First Amendment rights. They have been deprived of their constitutional protections, and suffered physical and emotional harm which continues to the present and will persist in the future.

## COUNT 2
### Retaliatory Prosecution, First Amendment and 42 U.S.C. § 1983
### against all UH Police Defendants

58. Plaintiffs incorporate by reference each preceding paragraph as if fully rewritten herein.

59. Plaintiffs Juanita Gowdy and Paris King engaged in protected conduct – notably, First Amendment-protected speech critical of government – when they criticized the UH Police Defendants for refusing to allow a grieving father to see his critically injured son.

60. The UH Police Defendants initiated a wrongful, malicious, and retaliatory prosecution against Plaintiffs Gowdy and King because of the criticisms the pair had made of Defendants' conduct.

61. The UH Police Defendants' initiation of this wrongful, malicious, and retaliatory prosecution against Plaintiffs was undertaken without any probable cause to do so, and substantially because of, and in retaliation against, their protected speech.

62. The UH Police Defendants' initiation of this wrongful, malicious, and retaliatory prosecution against Plaintiffs is sufficient to chill a person of ordinary firmness in the exercise of their constitutionally protected free speech rights.

63. As a direct and proximate result of Defendants' actions, Plaintiff King was wrongfully arrested, and Plaintiff Gowdy wrongfully detained, and each was subsequently charged with criminal violations, in retaliation for their protected exercise of First Amendment rights. They have been deprived of their constitutional protections, and suffered physical and emotional harm which continues to the present and will persist in the future.

## COUNT 3
### Excessive Force, Fourth Amendment and 42 U.S.C. § 1983
### against Defendants Gill, Tomm, and Sedivy

64. Plaintiffs incorporate by reference each preceding paragraph as if fully rewritten herein.

65. The Fourth Amendment of the U.S. Constitution protects citizens against the use of excessive force by law enforcement officers.

14

66. The use of force against Paris King by Defendants Gill, Tomm, and Sedivy was excessive in violation of Ms. King's constitutional rights.

67. Ms. King was placed under arrest for voicing her concerns over the UH Police Defendants' treatment of a father of a gunshot victim who was refused entry into the hospital.

68. Ms. King presented no threat to the public or the arresting officers.

69. Defendants Gill, Tomm, and Sedivy unnecessarily grabbed Ms. King's arm, and as King recoiled and complained about being needlessly grabbed by the police, they rushed her, slammed her body into a metal barrier and a stone garbage receptacle, and tackled her to the ground as they cuffed her and humiliated her, including by pulling her dress up over her underwear.

70. In using excessive force to detail Ms. King, Defendants Gill, Tomm, and Sedivy were motivated by malice in response to Ms. King's criticism of them as police officers, and Gill also was motivated by his animus towards women and those he perceives as suffering from mental health issues, and women who "don't know how to STFU" like they did "back in the day."

71. As a direct and proximate result of Defendants Gill, Tomm, and Sedivy's use of excessive force, Ms. King has suffered deprivation of constitutional rights, pain and suffering, and emotional distress, which she will continue to suffer in the future.

**COUNT 4**
**Unlawful Seizure, Fourth Amendment and 42 U.S.C. § 1983**
**against Defendants Sedivy, Tomm, Gill, and Huling**

72. Plaintiffs incorporate by reference each preceding paragraph as if fully rewritten herein.

73. The Fourth Amendment to the U.S. Constitution protects citizens against unlawful seizure of their person by law enforcement officers and prohibits law enforcement officers from seizing a citizen without legal justification.

74. Defendants Sedivy, Tomm, and Gill, acting under color of state law, arrested, investigated, reported upon, and ratified the arrest to prosecutors intending for their arrest to detain Plaintiff King and in full knowledge that their conduct in arresting her was unlawful.

15

75. Defendant Huling, acting under cover of state law, took no step to intervene in or prevent the unlawful arrest of Plaintiff King, despite knowing or being reasonably responsible to know that the arrest was unlawful; Defendant Huling intended for Plaintiff King to be detained.

76. Defendant Huling detained Plaintiff Gowdy despite her conduct giving no indication of resistance, and in retaliation for her criticism of police conduct, knowing such conduct was unlawful and intending to detain her anyway.

77. A reasonable police officer would have known that seizing Plaintiffs as described herein would violate their constitutional rights.

78. As a direct and proximate result of the Defendants' unlawful seizure, Plaintiffs Gowdy and King sustained economic and noneconomic damages, including but not limited to, physical and emotional pain and suffering which will continue into the future.

### COUNT 5
### Municipal Liability for Violation of Civil Rights, 42 U.S.C. § 1983
### against Defendants City of Cleveland and Kobak, Huling

79. Plaintiffs incorporate by reference each preceding paragraph as if fully rewritten herein.

80. Defendants City of Cleveland and Kobak, as the ultimate supervisors of the implementation of policy and procedure, and Cpl. Huling, as the direct supervisor of the arresting officers, acted to deprive Plaintiffs of their constitutional rights under the UH Police and Cleveland Police policies, procedures, and custom, of permitting illegal arrests and failing to train or supervise officers to prevent the violation of constitutional rights.

81. City of Cleveland and Kobak failed to adequately train, to implement corrected training, and/or to supervise the training and implementation of First Amendment speech protections for the UH Police Department, and knew or reasonably should have known this deficit would result in the violation of individuals' First Amendment rights by the UH Police Department's officers.

82. City of Cleveland and Kobak, acting under color of state law, failed to correct the training deficiency, or failed to take note of the failure to train, or failed to prevent action under the

16

deficiency, and by doing so directly and proximately caused the deprivation of Plaintiffs' constitutional rights under the First Amendment.

83. Cpl. Huling, the supervising officer on the scene, failed to correct the constitutional violation happening in front of him, when he knew or reasonably should have known that Defendant UH Police officers were engaging in conduct violative of the First Amendment protections on political speech, and took no action to reverse or prevent the arrest and charging of Plaintiffs despite knowing or reasonably being responsible to know, that the arrest and prosecution lacked probable cause and deprived Plaintiffs of their constitutional rights.

## COUNT 6
### Violation of First Amendment Right to Access Courts/Retaliatory Prosecution
### Custom, Policy, and Practice
### 42 U.S.C. § 1983 and *Monell,* 436 U.S. 658
### against Defendant City of Cleveland

84. Plaintiffs incorporate by reference each preceding paragraph as if fully rewritten herein.

85. This Count 4 is alleged against Defendant Cuyahoga County, which orders, permits, tolerates, conspires to ensure, and is deliberately indifferent to the pattern and practice of First Amendment violative and retaliatory conduct set forth above.

86. By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom of trumping up baseless criminal charges against victims of police misconduct—such as for assault, resisting arrest, or disorderly conduct—to insulate themselves and their officers from liability, knowing that the average citizen will be less likely to stand a criminal trial to retain the right to pursue their civil claims, Defendant Cuyahoga County deprived Plaintiffs of fundamental First Amendment protected freedoms, rights, remedies, privileges, and immunities guaranteed to every citizen of the United States.

87. And this pattern evidenced by the perverse incentives to engage in such misconduct that are created by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), as recognized by federal courts that have been exposed to their more egregious manifestations. *See, e.g., Taylor v. Cty. of Pima*,

17

D.Ariz. No. CV-15-00152-TUC-RM, 2017 U.S. Dist. LEXIS 228241, at *14-15 (June 6, 2017) ("The Court shares Plaintiff's concern that *Heck* and its progeny may have unintentionally created a financial incentive for prosecutors to require convicted defendants asserting actual innocence claims to enter no-contest pleas in exchange for immediate release from confinement. ... If the Pima County Attorney's Office required Plaintiff to accept a no-contest plea for the purpose of creating a *Heck* bar to § 1983 liability, the Court is concerned that such conduct undermines the fairness and integrity of the justice system."). *See also* American Bar Association Resolution February 6, 2017, https://www.americanbar.org/content/dam/aba/directories/policy/midyear-2017/2017-midyear-112b.pdf ("When the prosecutor's office supports a defendant's motion to vacate a conviction based on the office's doubts about the defendant's guilt of the crime for which the defendant was convicted, or about the lawfulness of the defendant's conviction, the office should not condition its support for the motion on an Alford plea, a guilty plea, or a no contest plea by the defendant to the original or any other charge. ... Besides raising serious public policy concerns, the practice is also unfair to the individual defendant. Guilty pleas, no contest pleas, and Alford pleas . . . complicates, if not eliminates, their ability to file a claim seeking compensation under state and federal law."); Caroline H. Reinwald, "A Deal with the Devil: Reevaluating Plea Bargains Offered to the Wrongfully Convicted," 99 N.C.L. Rev. Forum 139, 141 (2021), https://northcarolinalawreview.org/reinwald_finalforprint-2/ (discussing perverse incentives created by *Heck* doctrine and subsequent cases demonstrating egregious manifestations of same).

88. As a direct and proximate result of this unlawful and unconstitutional conduct, which was intentional and showed a wanton disregard for Plaintiffs' rights, Plaintiffs have suffered and will continue to suffer economic and non-economic damages for which the County and City are liable, including, but not limited to, mental, emotional, and physical pain and suffering. Williams is also entitled to punitive damages based on this unlawful and unconstitutional conduct. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

## COUNT 7
### Breach of Contract
### against University Hospitals Cleveland Medical Center

89. Plaintiffs incorporate by reference each preceding paragraph as if fully rewritten herein.

90. Plaintiffs had a contractual relationship with Defendant University Hospitals Cleveland Medical Center by virtue of Plaintiff Gowdy being a hospital patient and receiving treatment from University Hospitals.

91. Plaintiffs performed all obligations required of them under their contract with University Hospitals.

92. Implied in the parties' contractual relationship was an expectation by Plaintiffs to not be subject to physical violence or mistreatment by University Hospital employees and/or members of the UH Police Department.

93. University Hospitals breached their contract with Plaintiffs when members of the UH Police Department unnecessarily and wrongly brutalized Plaintiff King, wrongly detained Plaintiff Gowdy, and violated both Plaintiffs' civil rights as discussed herein.

94. As a direct and proximate result of University Hospitals' breach, Plaintiffs suffered both physical and mental injuries and are entitled to relief.

### VI.     PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully pray for judgment against Defendants in an amount in excess of $75,000 together with punitive damages, attorneys' fees, costs, expenses, and any other relief to which Plaintiffs may be entitled or that the Court deems equitable and just.

## VII. JURY DEMAND

Plaintiffs demand a trial by jury on all issues within the Complaint.

                                         Respectfully submitted,

                                         */s/ Peter Pattakos*
                                         Peter Pattakos (0082884)
                                         Gregory Gipson (0089340)
                                         Zoran Balac (0100501)
                                         Maryam Assar (0104229)
                                         THE PATTAKOS LAW FIRM LLC
                                         101 Ghent Road, Fairlawn, Ohio 44333
                                         P: 330.836.8533/F: 330.836.8536
                                         peter@pattakoslaw.com
                                         ggipson@pattakoslaw.com
                                         zbalac@pattakoslaw.com
                                         massar@pattakoslaw.com

                                         *Attorneys for Paris King and Juanita Gowdy*